# Winter *v.* City Council of Montgomery.

*Bill in Equity to enforce Payment of Municipal Taxes out of Property of Married Woman.*

1. *Waiver of demurrer and objections to amendable defects, by agreement for consent decree of compromise.*—A written agreement in a chancery cause, made and entered of record after demurrer filed, by which it is stipulated that the controversy should be compromised on certain specified terms, and should be submitted to the chancellor for decision "on the basis of this agreement," is a waiver of the demurrer, so far as consent can waive objections to the equity of the bill, and of all amendable defects in it; but the decree must conform to the terms of the agreement.

2. *Legal and equitable remedies for collection of taxes.*—Taxes levied and assessed create a legal liability, which will support an action at law, although a statutory remedy is also given to enforce their payment; and where the legal remedy is inadequate, as where the owner of the property is a married woman, and the taxes have remained unpaid for a series of years, the lien on the property may be enforced in equity.

3. *Subscription to railroad by municipal corporation; levy of tax to pay interest on bonds.*—The power being granted to the corporate authorities of the city of Montgomery, by special statute, "to levy such taxes as may be necessary, upon the real and personal property in said city," to pay the interest on the city's subscription to the capital stock of the South and North Alabama Railroad Company, a levy on real property only was not void, the failure to include personal property also being a mere irregularity; and the action of the authorities being in its nature legislative and governmental, rather than corporate, the *onus* is on a party assailing it to show that a different rate of taxation was necessary.

4. *Opinion of witness; when admissible.*—As to the amount and value of the personal property in a city at a particular past time, or

31

[Winter v. City Council of Montgomery.]

during specified years, the opinions of witnesses can not be received, when they do not appear to be founded on knowledge of the facts.

5. *Documents used before register; presumption in favor of chancellor's decision.*—When affidavits, or other documents, used before the register on a reference, are not set out in the record, this court can not make any presumption as to their contents, against the rulings of the register and the chancellor.

6. *Arbitration of pending suit; construction and effect of unexecuted agreement.*—An agreement to submit a controversy to arbitration, not consummated, does not oust the jurisdiction of the courts, at the instance of either party; and where the matters in controversy in a pending suit are submitted for decree " on the basis of an agreement " between the parties, by which it is stipulated that, as to a part of the amount claimed by plaintiff, which was to be submitted to arbitration, "no collection shall be made until the decision of said arbitrators, provided such decision is made by" a certain day, this does not prevent the reduction of the demand to judgment by the decree of the court.

7. *Consent decree against married woman.*—In the absence of fraud in its procurement, or other special cause shown, a consent decree is as binding on a married woman as on a person *sui juris.*

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 22d February, 1882, by the City Council of Montgomery, a municipal corporation, against Joseph S. Winter and his wife, Mrs. Mary E. Winter; and sought to subject certain real estate in the city of Montgomery, which was alleged to be held by Mrs. Winter "as her separate estate," to the payment of municipal taxes assessed against it from the year 1873 to 1881, inclusive. The transcript filed in this court has never come to the hands of the reporter, and he has used the original papers on file in the office of the register in chancery. A demurrer to the bill was filed by Mrs. Winter, assigning twenty-four causes or grounds of demurrer; among which were, that the bill showed no case of equitable jurisdiction, and that the statutory lien was lost and barred. Afterwards, a written agreement was entered into, as follows:

" *Whereas* a suit is now pending in the Chancery Court at Montgomery, wherein the City Council of Montgomery is complainant, and Mary E. Winter is defendant, involving a controversy in relation to city taxes for several years past: Now, for the purpose of compromising and settling said controversy, and the claims and demands of the complainant against the respondents and the property concerned in said suit, this agreement, made and entered into this 18th day of October, 1882, by and between the City Council of Montgomery of the one part, and Joseph S. Winter and Mary E. Winter of the other part, *witnesseth:*

"1. The City Council of Montgomery is to remit all taxes levied to pay the certificates of indebtedness issued by the City

[Winter v. City Council of Montgomery.]

Council, since and including the year 1873. The following taxes to be paid by the defendant in the said tax suit, and such amount of the railroad tax as may be found to be proper, for the years 1873, '74, '75 and '76, upon ascertaining what rate of taxation upon the real and personal property respectively of the city was necessary to pay the interest on the railroad bonds during said years, estimating $45,000 for each of said years as necessary for said purpose. (*B.*) All taxes levied to pay the current expenses, and the bonds issued in adjustment of the indebtedness of the city under the act of December 16th, 1876, from 1873 to 1881, inclusive. (*C.*) No interest to be charged on any of the taxes. (*D.*) The select committee heretofore appointed by the City Council, to reduce the assessed value of any of the property, upon showing made that there has been an over-valuation made; but this matter to be left to the decision of the committee alone.

"2.　The said Mary E. Winter to have one, two, and three years, in which to pay the amount found due, from July 5th, 1882; and no interest to be charged thereon until the 5th July, 1883, and one-third of the amount payable each year.

"In the event it is decided by the Supreme Court, in the case of the *State, ex rel. &c. v. City Council of Montgomery et al.*, that the levy of the taxes concerned in the said suit, made by the City Council of Montgomery aforesaid, to pay interest on the bonds issued in aid of the South and North Alabama. Railroad Company, is invalid, then the amount of all railroad taxes included in the claim of the city aforesaid, and concerned in said chancery proceedings, is to be stricken from the amount claimed by said city.

"4.　If it be decided by arbitrators, one to be chosen by each of the parties hereto, and they to call in an umpire if they disagree, that the sale by the city of the property for the taxes of 1873 extinguished the demand of the city for such taxes, then the amount thereof is to be stricken out of the amount of the taxes claimed by the City Council; provided said arbitration is had within thirty (30) days from this date; and if such arbitration is not had within thirty (30) days from this date, then the question is to be submitted to the Chancellor for decision in vacation.

"5.　The said case of the *City Council of Montgomery v. Mary E. Winter* is to be submitted to the Chancellor in vacation, and a decree rendered upon the basis of this agreement. The submission is to be made after the expiration of thirty (30) days from this date; provided the arbitrators herein provided for do not render a decision within thirty days.

"6.　No taxes to be paid on any property which did not belong to the defendant in the chancery suit at the time the taxes were assessable.

"In case no decision is made by the Supreme Court in the case of the *State, ex rel. &c. v. City Council of Montgomery*, by July 5th, 1883, then the first payment provided for by this agreement, when made, shall be applied, *pro tanto*, to the payment of the said city taxes other than the taxes in aid of the South and North Alabama Railroad Company ; and the question of the validity of the taxes included herein on account of said railroad company shall be submitted, on demand of either party, to mutually agreed on third parties, learned in the law and disinterested, with power in them to appoint an umpire, if necessary to settle any difference of opinion between them ; and no collection of said railroad taxes shall be made until the decision of said arbitrators, provided such decision is made by July 15th, 1884."

Under this agreement, a decree was rendered on the 3d April, 1883, as follows : "This cause is submitted on the pleadings and agreement of parties, for consent decree; and upon consideration, it is ordered, adjudged and decreed, that complainant has a lien upon the real estate described in the bill which belonged to defendant, Mary E. Winter, for the payment of the taxes due by defendant to the city of Montgomery, for the years 1873, 1874, 1875, 1876, 1877, 1878, 1879, 1880, and 1881. It is further ordered, adjudged and decreed, that it be referred to the register of this court to ascertain—(1.) The rate of taxation upon the real and personal property in the city of Montgomery which was necessary to pay the interest on the bonds issued in aid of the South and North Alabama Railroad Company during the years 1873, 1874, 1875, and 1876, estimating $45,000 during each of said years as necessary for that purpose. (2.) The assessed value for taxation of the property in the city of Montgomery belonging to the said Mary E. Winter during each of the years 1873, 1874, 1875, 1876, 1877, 1878, 1879, 1880, and 1881. In ascertaining this assessed value, the register will be governed by the determination of the select committee of the City Council of Montgomery, as to the valuation of the property on which such committee reduced the assessed value. (3.) The amount of taxes due by the said Mary E. Winter to the city of Montgomery for the years 1873, 1874, 1875, 1876, 1877, 1878, 1879, 1880, and 1881 ; ascertaining and reporting the amount of each year separately, and ascertaining and reporting separately the amount of taxes to pay the interest on the railroad bonds, and the amount of taxes to pay the current expenses of the city and the bonds issued in adjustment of the indebtedness of the city under the act of December 16th, 1876. The register will not ascertain the amount of taxes upon any property for any of said years which did not belong to the defendant during such year, at the commencement of the tax-

year; and in ascertaining the amount of taxes to be paid by the defendant, the register will be governed by the agreement of parties this day filed. The register will report as early as practicable."

The register made his report, under this reference, to the ensuing October term, 1883, and the cause seems to have been then submitted for decree, as shown by the recitals of a decree rendered in vacation, in August, 1884, as follows:

"This cause was submitted at the Spring term, 1884, 'on the report of the register, for final decree,' and held for consideration in vacation. At the Fall term, 1883, it had been submitted 'by agreement on file, to be considered in vacation;' but the file had not been delivered to the Chancellor before the Spring term, 1884, and no action had been taken. When the papers were sent to the Chancellor in August, 1884, there were two notes of testimony on file; one filed Oct. 20, 1883, and the other on July 3d, 1884, as note of testimony No. 2. On July 7th, 1884, the defendant also filed six exceptions to the register's report. In the second note of testimony, complainant objects to the introduction of the evidence numbered 7, and also to the affidavits named in item 8; and thereupon it is ordered, that the same be, and* it is hereby sustained. There seem to have been exceptions to the ruling of the register on the admissibility of testimony at the reference; but, as they are not alluded to in the exceptions, nor in the notes of testimony, they need not be noticed.

"1. The agreement and the decree of reference is, that the defendant is chargeable with 'such an amount of the railroad tax for 1873–4–5–6 as may be found to be proper, upon ascertaining what rate of taxation upon real and personal property respectively was necessary to pay interest on the railroad bonds.' The register finds, in his report, that no tax on personal property was levied in 1873 for this purpose; and that, therefore, the tax for that year, for this purpose, fell exclusively on real estate. It does not seem that this finding is opposed to the agreement, or to the order of reference; and thereupon it is ordered, that the first exception be overruled.

"2. It seems to the court that there was sufficient testimony before the register to support his finding, that the several parcels of land were the property of the defendant, Mary E. Winter, in 1873, and continued to be in such condition that a lien attached to them as her property, in the succeeding years; and thereupon it is ordered, that the second exception to the report be overruled.

"3. If lands are sold for taxes, and a deed made to the city, they can not be redeemed, except upon the payment of taxes, not only for the year for which they were sold, but also for the

succeeding years; and so, if both parties choose to regard the sale as void, a lien attaches to the land for the payment of the taxes, from the first year to its enforcement. It is thereupon ordered, that the third exception to the report be overruled.

"4. There does not appear anywhere an agreement or consent to submit to arbitration. In the fourth paragraph of the agreement it is provided what shall be done, *if* certain things shall be decided by arbitration; but this can not be construed into an obligation to submit to arbitration. It is thereupon ordered, that the fourth exception to the report be overruled.

"5–6. These exceptions are too general, and, for this reason, are not maintainable; and thereupon it is ordered, that the 5th and 6th exceptions to the report are hereby overruled; and it is ordered, adjudged and decreed, that the register's report be in all things confirmed.

"And it appearing from said report, and from the testimony, that the sum of $4.440.50 is due to complainant for taxes for said years from defendant upon the lands described in the pleadings, one-third of which is due by agreement on the 5th July, 1883, one-third on the 5th July, 1884, and one-third on the 5th July, 1885, without interest; it is thereupon ordered, adjudged and decreed, that complainant has a lien upon the real estate described in the pleadings, for the payment of the taxes as aforesaid on the same; and that, unless the defendant pay to the register, within twenty days after the filing of this decree, all the costs of this cause, and two-thirds of said sum of $4,440.50 to complainant, the register of this court will proceed to advertise and sell the lands described in the pleadings, in accordance with the rules and regulations governing the sale of real property under executions at law, and, out of the proceeds of such sale, will retain and pay the costs and expenses of said sale and of this suit, and then two-thirds of said sum of $4,440.50, to-wit, $2,960.33, to complainant, if sufficient thereunto; and if not sufficient, then so far forth as the same will extend. But, if less than the whole of said real estate will be sufficient to pay said costs, expenses, and taxes aforesaid, then the register will sell such portion only of said lands as will be sufficient; first selling those portions which may be selected to be sold, if any, by defendants. But, if said costs and expenses are paid, and said sum of $2,960.33, before a sale of said lands, then no further sale will be made until after July 5th, 1885, when the register will advertise and sell, as above directed, the whole, or any portion of said lands then remaining unsold, unless the costs and expenses are first paid to the register, and the remaining one-third of said sum of $4,440.50, to-wit, $1,480.17, are paid to the complainant; and the register will apply the proceeds to the payment of such costs and expenses

[Winter v. City Council of Montgomery.]

as are unpaid, and to the payment of said sum of $1,480.17 to the complainant ; and if a balance shall remain in his hands of such proceeds, he will pay the same to the defendant, Mary E. Winter. The register will make a deed to the purchaser, and put him in possession of the premises, upon his complying with the terms of the sale. Complainant may bid at such sales."

The appeal was sued out on the 1st March, 1885, from this last decree, and each part of it seems to have been assigned as error.

THOS. H. WATTS, and J. S. WINTER, for appellant.

GUNTER & BLAKEY, *Contra.*

SOMERVILLE, J.—The bill is filed by the City Council of Montgomery, as a municipal corporation, to enforce the payment of back taxes, due for nine consecutive years, and assessed against the real property belonging to a married woman. A demurrer was filed, in which many causes were assigned, and among others the objection, that the complainant's remedy. was at law, and not in a court of equity, which had no jurisdiction, as was urged, to enforce a tax lien. This demurrer was not, however, insisted on, nor ruled on by the court, but was waived by a mutual agreement of the parties litigant, by which it was stipulated that the pending controversy should be compromised upon certain specified terms, and should be submitted to the chancellor for the rendition of a decree by him, "upon the basis of this agreement." It is quite obvious that the effect of this agreement, bearing date October 18th, 1882, was to abandon the demurrer, and all objections raised by it, so far as this could be accomplished by consent. The argument is made, however, that notwithstanding this agreement, the Chancery Court has no jurisdiction of the subject-matter in controversy, and that consent of parties can not confer such jurisdiction. Let us examine the nature of this suit, with the view of testing the correctness of the application of this principle.

The subject-matter of the suit, as we have said, is the enforcement of a lien, given by statute, against the separate estate of a married woman, for taxes assessed according to law. In *Perry County v. Railroad Company*, 58 Ala. 546, it was said that, according to a preponderance of the authorities, taxes levied and assessed become a legal liability on the tax-payer, and may be enforced by an action at common law, unless the statute gives a remedy which is intended to be exclusive. It was not necessary, however, to go further in that case than to hold, that a levy and an assessment of taxes create a legal liability on the tax-payer to pay. Desty, in his treatise on Taxa-

[Winter v. City Council of Montgomery.]

tion, says: "The preponderance of authorities establishes, that either debt or assumpsit may be sustained for the recovery of taxes, as debt lies for a sum of money certain due by statute." 2 Desty Tax. § 126. In *U. S. v. Lyman*, 1 Mason, 482, it was ruled by Judge Story, that debt would lie to recover duties upon imported goods; and this ruling was followed in *Meredith v. U. S.*, 13 Peters, 486. In accordance with this view, it was again decided in *Savings Bank v. U. S.*, 19 Wall. 227, that debt will lie for taxes in the name of the Government, or State. There are many other well-considered cases which support this principle, upon the theory, that an undertaking or obligation to pay is created by law, being implied from the existing duty, just as, in this and many other States, debt is commonly brought for a mere penalty created by statute.—*Strange v. Powell*, 15 Ala. 452; *Perry County v. Railroad Company, supra; City of Dubuque v. The Illinois Cen. R. R. Co.*, 39 Iowa, 56; *Cason v. Newsom*, 8 Heisk. (Tenn.) 446; *City of Memphis v. Looney*, 9 Baxt. (Tenn.) 130; *U. S. v. Pacific R. R. Co.*, 4 Dillon, 66; Greenl. Ev. (14th Ed.) §§ 270, 288; Bishop on Contr. §§ 5, 72; 2 Desty on Tax. § 126. We adopt this principle, as the sounder and better one, although there are many respectable authorities to the contrary. If no action at law would lie for taxes, much inconvenience and injustice would result. A tax-payer might often escape the payment of his just proportion of the public burdens, imposed for the support of government, by the wrongful act of a tax-collector in extending the payment of his taxes, either from gross negligence, or a weak spirit of accommodation.

It can not be doubted, that there may be circumstances under which a court of equity would take jurisdiction of the enforcement of a tax-lien; although the rule may be, that it will decline to do so without the existence of some ground of equitable cognizance, other than the mere fact that there is a lien. In *State v. Duncan*, 3 Lea (Tenn.), 679, a bill of this character was sustained, the question of equitable jurisdiction to enforce such liens being one especially under consideration. The argument there was the same as that urged here—that the lien being one created by statute, and the mode of its enforcement being expressly given, all other modes were excluded by necessary implication. The lands had been sold for ten years' successive taxes, and purchased by the complainant, the sales being void for irregularity in the proceedings. It was held, that the statutory remedy was not adequate in a case of complication and embarrassment like the one in hand, where the purpose was to collect back taxes; and the bill was accordingly sustained, as was also a similar one in *Edgefield v. Brien*, 3 Tenn. Ch. Rep. 673. The courts of Tennessee, we may add, have always

adopted the view that taxes were a debt, for which an action at law would lie.

The remedy of the complainant in the present case is shown to be attended with many embarrassments. The lien for taxes is created by law, and is a legal right which exists independently of the remedy·for its enforcement. This remedy given by statute is gone with the lapse of years, because of the failure of the proper officer to enforce it at the authorized time. The owner of the property is a married woman, against whom a personal judgment will not lie, and who is not suable in an action of ordinary debt at law, because of her coverture. This fact is often, of itself, a ground of equitable cognizance. 1 Pomeroy's Eq. Jur., § 160; *Fariss v. Houston*, 78 Ala. 250. We might safely assert, that the allegations of the complainant's bill, setting out the foregoing facts, show a proper case for the jurisdiction of a court of chancery. But this we need not now decide. It is unimportant that the averments of the bill were defective. or wanting in fullness, and, therefore, that it was for many reasons demurrable, or that the bill itself was wanting in equity, because the complainant had a complete and adequate remedy at law. These defects, if they existed, were capable of being cured by amendment; and the consent of the defendants, that a decree should be rendered by the chancellor, was tantamount to an agreement that all amendable defects should be supplied by intendment. These we will accordingly regard as having been made. *Consensus tollit errorem.* What we decide is, that, in this case, the Chancery Court was not without jurisdiction to render a decree condemning the property of the defendant, Mrs. Winter, to the payment of such taxes as were due by her to the City Council of Montgomery, under the allegations of complainant's bill. *Abraham v. Hall*, 59 Ala. 386; *Westmoreland v. Foster*, 60 Ala. 448; *State v. Duncan*, 3 Lea, 679, *supra.*

The only decree which the chancellor was authorized to render, however, was one based on the written agreement of the parties. If we can clearly see from the evidence that his decree conflicts with the stipulations of this agreement, it is our duty to declare it to be so far erroneous. It is an important feature of this agreement, that it recognizes a *prima facie* liability on the part of the defendant to pay all taxes levied to pay the current expenses of the city, as well as those levied under the act of December 16th, 1876, from the year 1873 to the year 1881, inclusive. From this amount there is an express agreement that certain deductions may be made, some absolutely, and others on conditions specified.

It is insisted on the part of the appellants, that they should have been permitted to enter into a collateral investigation of

the amount and valuation of the personal property located in the city of Montgomery, during the year 1873, with the view of showing what rate of taxation was necessary to be levied in order to pay the interest on the railroad bonds for that year. The grant of power to the city council being " to levy such tax as may be necessary upon the real and· personal property in said ' city," it may be that both kinds of property should have been equally subjected to taxation. In *Winter v. The City Council of Montgomery*, 65 Ala. 404, we held, that a levy upon real property only was not void, and that the omission to tax personal· property was at most only an irregularity, for the correction of which an injured tax-payer would have an adequate remedy by *mandamus*. Conceding the construction contended for to be correct, the *onus* was on the defendants to show, by proper evidence, that another and different rate of taxation than that adopted by the city council was necessary ; their action being in its nature legislative and governmental rather than merely corporate, as was held by this court in the case last cited. The testimony offered by the defendants, to show the amount and valuation of all the personal property in the city of Montgomery in the year 1873, was incompetent, and properly rejected. The witnesses who were introduced, failed to show that they possessed any knowledge of the fact. Their opinion, in the absence of such knowledge, was mere speculation. The first exception to the report of the register raises only this one point, and was properly overruled.

As it was provided by item 6 of the agreement, that " no taxes were to be paid on any property which did not belong to the defendants" at the time the taxes were assessed, it was competent for them to show that the ownership of any of the property. so assessed was in another person at the time of such assessment. It appears that this was attempted to be done by the introduction of certain deeds and affidavits, referred to in the register's note of testimony. As these papers are no where set out in the record, we can not know their purport or contents, and must presume the finding of the register and of the chancellor to be correct.—*Toon v. Finley*, 74 Ala. 343.

For a like reason, we decline to disturb the finding of the chancellor on the question whether the sale by the city of certain property for the taxes of 1873 extinguished the demand of the city for such taxes. There appears to have been an agreement of counsel as to the facts attending the sale of this property, which was in evidence before the register ; but it has been omitted from the record, without any evidence of its contents. *Non constat* but that it sustained the conclusion reached in the decree, and so the law presumes. The obvious condition, upon which it was impliedly agreed that this matter should be sub-

mitted to arbitration, was that the arbitration, if had at all, should be completed within thirty days from date, which was never done.

It is further contended that, under the terms of the agreement of October 18th, 1882, the Chancery Court was excluded from considering the question of the validity of the city's claim of taxes levied to pay interest on certain bonds issued in aid of the South and North Alabama railroad ; that this matter of controversy was agreed to be submitted to arbitration, and the jurisdiction of the courts was thereby ousted. We do not construe the agreement to have this effect. It has been held by this court, that a mere agreement to arbitrate a controversy "can not be enforced at law or in equity, because no one can effectually waive his right to have his suits determined in the proper courts provided by the laws of his country."—*Bozeman v. Gilbert*, 1 Ala. 90 ; *Stone v. Dennis*, 3 Port. 231. However this may be, the authority of arbitrators, under a submission at common law, could always be revoked by either party before the making of the award, and a mere agreement to arbitrate is not considered a defense to an action.—2 Greenl. Ev., §§ 79, 69. How far, if at all, these principles may be affected by our present Code of laws governing statutory arbitrations, is not a question before us.—Code, 1876, § 3536.. Our proposition is, that it was never contemplated by the agreement of the parties that the chancellor should not consider the question of the validity of the railroad tax. The agreement itself, upon the basis of which the decree was rendered, recognizes a *prima facie* liability for all taxes levied by the city to pay the bonds on which this interest was due. It was agreed that the cause should be submitted for decree within thirty days from October 18th, 1882, and that the defendants should have one, two and three years, in which to pay "the amount found due." Inasmuch, however, as a case was then pending in this court involving the legal validity of this tax, it was agreed that, in the event that the decision was adverse to the tax, "it should be stricken from the amount claimed by said city." If no decision was made by the fifteenth of July, 1883, the question was to be submitted to arbitration, on demand of either party, " and," it was added, "*no collection of said railroad taxes shall be made*, until the decision of said arbitrators, provided such decision is made by July 15th, 1884." This provision operated only as an agreement to stay the *collection* of the tax for the time, and under the conditions stipulated, and not to waive the plaintiff's right to have it reduced to judgment by the court to which the whole controversy had been submitted by the terms of the agreement. If its invalidity had been pronounced, in the manner agreed on, the amount of the tax could have

[Winter v. City Council of Montgomery.]

been deducted from the decree of the court. And such we believe was the intention of the parties.

There is, in our opinion, no force in the suggestion, that the agreement authorized only a personal decree against the defendants, and not a condemnation of the property. The law made the taxes properly assessed a lien on the property, and there is no clause in the agreement which can be construed to waive the right. The decree did not create the lien. It only seeks to furnish a remedy for its enforcement. The declaration of the statute, as found in section 15 of the city charter, to the effect that the assessment "shall have the force and effect of a judgment and execution, and may be collected by levy and sale of the property," on giving proper notice, does not impair this lien in any respect.—Acts 1869–70, p. 366. It only furnishes warrant of law for the seizure and sale of the property, as in cases of execution sale on process issued from the Circuit Courts of the State.

We find no error in the chancellor's decree, and it must be affirmed.

CLOPTON, J., not sitting.

NOTE BY REPORTER.—On a subsequent day of the term, in response to an application for rehearing, the following opinion was delivered:

STONE, C. J.—The preservation of life, liberty, property— of public peace, good order, good morals and public health, are everywhere acknowledged to be powers and functions of civil government, whose exercise is necessary to the very existence of social order. Municipal government can not exist, in any form, without human instrumentalities, for the support of which a revenue is indispensable. Hence it is, that revenue is the life-blood of the municipality; without which it must perish. Hence it is, that government can not barter away its power to levy and collect taxes. The payment of taxes is, in part, the price every citizen pays for the protection of himself and his property, which the government extends alike to all. The government owes to its citizens of every class the same measure of protection, and it makes itself wickedly derelict, if it fails to discharge this sacred obligation. Is there not an obligation equally binding on the citizen, to contribute his proportion of the revenue—the life-blood—so necessary to the existence of the municipality? Can human ingenuity conceive of a mere civil obligation that is higher, or more binding, than this? So important did the legislature esteem the duty of paying taxes, that they declared a lien on the property assessed for their pay-

[Winter v. City Council of Montgomery.]

ment; and this lien follows the property, into whose hands soever it may be transferred. Quoting from Burroughs on Taxation, we, in *Perry County v. Railroad Company*, 58 Ala. 546, 564, said : "Taxes are a political necessity. If the law raises a promise to pay, that one of its citizens may not obtain the services or goods of another without compensation, surely it will raise it that the State may exist. The tax is a personal charge against the citizen, notwithstanding a lien upon the property may be given by statute for its payment."

There are authorities which hold, that when the statute provides a remedy for the enforcement of taxes, such remedy is in its nature exclusive, and precludes all other modes of redress. We submit if this is a just presentation of the question. The liability to pay taxes imposes both a legal and moral duty, which can and should in no sense be assimilated to a statutory penalty. It is, in this case, and generally is, more than a mere legal and moral obligation. There is a lien on the property for its payment; a lien which adheres to it, no matter who may own the title ; a lien which a *bona fide* purchase will not override. Pure *allodium*—"absolute ownership of property, without recognizing any superior to whom any duty is due on account thereof"—does not exist under our system. Liability to taxation, and to the assertion of the right of eminent domain, rests on all estates as a servitude or infirmity. And can it be, that the mere failure of an officer to do his duty sternly, whether caused by accident, carelessness, ignorance of the proper remedy, inattention or undue indulgence, is a forfeiture of this right,—a right pertaining, not to the delinquent officer, but to the municipality? In *Perry County v. Railroad Company, supra*, we said : "Levy and assessment of taxes create a legal liability on the tax-payer to pay." We adhere to that doctrine, with all its implies.

Married women can not be sued at law, on personal contracts, or legal liabilities. They can only be reached by proceeding in equity against their property, and holding it accountable. They must be made parties, but no personal decree can be rendered against them.

· It is contended that, under the averments of the bill in this case, we must treat Mrs. Winter's separate estate as statutory ; and inasmuch as the law does not empower her to incur a binding money obligation, she can not be proceeded against, upon an implied promise to pay. From these premises, the conclusion is claimed, that no liability for taxes can be fastened on her property. We concede the premises—concede that, as her estate is made to appear in the present suit, she can make no binding personal contract to pay money. Does the alleged conclusion follow ?

Under no circumstances, save those mentioned in the statute, can a woman, pending her coverture, make any disposition of her statutory estate, or fasten a liability, charge, or incumbrance upon it. But there are many categories in which such estate may be made subject to judicial determination. An unmarried female has undoubted capacity to make binding personal contracts, and is subject to the same methods for their enforcement, as the opposite sex is. Her subsequent marriage, leaving such liability unliquidated, changes the tenure by which she holds her property into statutory separate estate. Yet it does not relieve it from the payment of her debts contracted before coverture. So, she may be a trustee, made so by appointment, or may acquire property which is charged with a trust. A purchase of real property in her name, the purchase-money remaining unpaid, in whole or in part, is a familiar illustration. In such case, equity deems that she holds the land in trust for the payment of the purchase-money, and orders the land to be sold, unless the liability is otherwise removed. The true principle is, not that the married woman's property is placed beyond the reach of the law, but that, pending the coverture. she can make no contract which charges her statutory estate with the payment of money. *Strong v. Waddell,* 56 Ala. 471; *Marks v. Cowles,* 53 Ala. 499; *Lee v. Sims,* 65 Ala. 248.

It is further contended that the consent decree found in this record is not binding on Mrs. Winter, by reason of her incapacity to give such consent. My own opinion is, that the decree is right, without the aid of her consent. But, in the absence of some special reason, such as fraud in its procurement, a consent decree is as binding on a married woman as on a *feme sole.—Lee v. Sims,* 65 Ala. 248, 254.

We have, then, this case: Taxes have been assessed against the real estate of a married woman, which raises a moral obligation and legal liability for their payment; that obligation is emphasized by the legislative declaration that a lien exists on the property assessed for its discharge; a married woman owns the property, and no personal suit can be maintained against her. If a bill to subject the property can not be maintained, the city is without a remedy to coerce the payment of these taxes, and must lose them, notwithstanding the just claim it has, and the lien created for its security. The bill contains too many elements of equity to be dismissed out of this court.

Application for rehearing denied.