# Thorington *v.* City Council of Montgomery.

*Bill in Equity by Purchaser of Lands at Tax Sale, for Injunction against Sale for Prior Taxes.*

1. *Sale of lands for unpaid taxes; effect on lien for prior taxes.*—A sale of land for delinquent taxes, it was held in this case on the former appeal (88 Ala. 548), destroys the lien for prior unpaid taxes, of which no notice was given at the sale, and confers a clear title on the purchaser, if he bought in good faith, for his own benefit, and not by fraud or collusion with the delinquent tax-payer; but, on consider-

[Thorington v. City Council of Montgomery.]

ation of the evidence now adduced (showing that the purchaser was the daughter of the delinquent tax-payer; that the property was bid off at the tax sale in her name by her father, who was the husband and trustee of the owner against whom the property was assessed, and who paid the money to the officer conducting the sale; that he continued to control the property after the sale as before, renting it out, taking notes for the rent payable to himself as trustee, and collecting them; and failing to show that the daughter furnished the money), the court holds that the purchase was collusive, that the sale worked no real change in the beneficial ownership of the property, and that it was still subject to the lien for prior taxes.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 25th January, 1886, by Mrs. Sallie G. Thorington, against the corporate authorities of the city of Montgomery; and sought to enjoin a threatened sale of three city lots in Montgomery, under a decree in chancery declaring and enforcing a lien on said lots and others, as the property of Mrs. Mary E. Winter, for unpaid taxes. The complainant, who was the daughter of Mrs. Mary E. and Joseph S. Winter, claimed the property as the purchaser at a sale made on the 23d November, 1885, under a decree rendered by Recorder Graham, for the unpaid city taxes assessed against the property for the year 1884; and she claimed that this sale discharged the property from the lien for prior taxes assessed against the property, for which a decree in chancery had been rendered in favor of the city, and under which the property was advertised for sale by the register in chancery. The history of the case may be learned from the reports on former appeals (82 Ala. 591; 8ⁿ Ala. 548), in connection with the report of the case out of which the litigation grew (79 Ala. 481–94). On the last hearing in the court below, the chancellor dismissed the bill; and his decree is here assigned as error. The opinion states the material facts.

ARRINGTON &. GRAHAM, and THOS. H. WATTS, for appellant.

J. M. FALKNER, and W. A. GUNTER, contra.

STONE, C. J.—The present suit was instituted in January, 1886. It has been twice before in this court.—82 Ala. 591; s. c., 2 So. Rep. 513; 88 Ala. 548; s. c., 7 So. Rep. 363. It grew out of the suit of Winter v. City Council of Montgomery, reported in 79 Ala. 481.

At the Spring term, 1890, of the Chancery Court, a motion was filed by complainant for an order to compel the respondent to produce in court the testimony of M. E. Winter and

others, alleged to have been taken by respondent; "and if that may not be consistently and legally done, that reasonable opportunity be given complainant to further fortify her case herein, by allowing complainant reasonable opportunity to establish the said testimony as taken, for use in complainant's behalf in this cause." This motion was accompanied by an affidavit of J. S. Winter, in which he set forth that the deposition of Sallie G. Thorington had been taken for respondent on interrogatories filed and crossed, and that in said deposition she had testified that the lots in controversy in this suit were purchased with her money, at her request, and in good faith. The affidavit further stated "that complainant, assuming that due return would be, or had been made of the testimony so taken as aforesaid, leaned upon it to show the true *status* of the facts, and has not, therefore, taken, or caused to be taken, any testimony whatever; and, as counsel for complainant, he, the said affiant, can not and does not advise going to trial in the cause without proof, directly made in terms, of the *bona fides* of the said purchase by the said complainant, of the property concerned as aforesaid, of the payment of the purchase-money through a duly authorized agent in that behalf; and that the money so paid was in fact and in truth hers, is a matter within the actual knowledge of this affiant. And affiant further says, that the matters and facts so suggested are susceptible of proof, and if allowed the opportunity, affiant expects to, and will have due proof made of the same, within reasonable time," &c.

This motion and the accompanying affidavit were, by the register, marked filed April 14, 1890. The case was not tried at that term, but no entry was made of record, showing that the cause was continued. Neither is it shown that any action was taken on the motion, or that the attention of the court was called to it.

The next orders in this cause, shown by the record, were made at the October term, 1890. The first was an order of publication. Then follows an order of submission, with a note of the testimony. These are dated October 15, 1890. On October 16, 1890, a motion was made by complainant, accompanied by an affidavit of J. S. Winter, to set aside the submission, and grant to her further time to take testimony, by which she proposed to prove the purchase of the lots in good faith, and with her money. This affidavit sets forth the long protracted illness of affiant, one of the plaintiff's counsel, which disabled him to prepare the case for trial. Two other solicitors, it appears, had prepared and filed the bill. It was signed alone by them, and they join in the assignment of

[Thorington v. City Council of Montgomery.]

errors. The affidavit sets forth no reason why the testimony had not been procured by the other solicitors. The only excuse looking in this direction is the clause in the affidavit which asserts that J. S. Winter, the affiant, "has, in point of fact, looked after the details more, perhaps, than any other of the complainant's counsel therein, and accordingly was, perhaps, better informed as to these details."

The chancellor responded to this motion and affidavit as follows:

"The complainant, after the argument of this cause had progressed to the last speech to be made by J. S. Winter, the counsel and father of complainant, and the submission of the cause had been made, said J. S. Winter interposed for complainant an application that the submission be set aside, in order that he might submit a motion made at the last term of the court, which was filed by the register, but was not submitted to the court. This motion was filed by the register at the April term of the court, and which was never submitted to the court or acted upon, was that the court should instruct the commissioner, Horace Stringfellow, to return into court how he had taken or acted under a commission issued to him to take the depositions of Mrs. Mary E. Winter and of complainant, at the instance of defendant, upon interrogatories filed by defendant, and to return the deposition of such witnesses or either of them which he had taken.

"Upon examination of the facts in this cause, I find that at a former term said J. S. Winter had asked the court to instruct the commissioner to return said deposition of M. E. Winter to him, and to return the commission to the court, as having been improperly issued. Upon a hearing of the application of J. S. Winter, the court directed the commissioner to take whatever action in the matter he might choose, either to destroy said deposition, or retain it, but in no event to permit either party to this suit to examine it. It was held that the deposition had been taken improperly, because no commission had been properly issued; and that as Mr. Stringfellow had acted without legal authority in taking the deposition, it was the right of Mr. Winter, representing the complainant, to ask the court that the deposition should not be subjected to the scrutiny of defendant's counsel. The order which I made was verbal, and was made at Mr. Winter's suggestion, but was a little different from his request. His request was that I direct the commissioner to return the deposition to the witness, or to himself; but I made the order that he keep the deposition secret from all parties to the suit, or destroy it, as he desired.

[Thorington v. City Council of Montgomery.]

"If this deposition was now before the court, it could not be used for any purpose, unless in the meantime the deposition of the witness had subsequently been taken, and the deposition taken by Mr. Stringfellow should be offered to contradict any of the statements made therein. But I append hereto a statement of Mr. Stringfellow, that the deposition had been destroyed. It could, therefore, do no good to any person now to take any action therein at this time.

"It can not be disputed that, if any one desired to take action in the matter to get the deposition of either of these witnesses, there has been ample time to have done so. The submission in this cause was made without any application for a continuance in order to get the deposition of these witnesses, one of whom is the complainant. The complainant has never taken any steps, during the time this case has been continued from year to year, to get her own or her mother's deposition in the case. Under these circumstances, the motion to set aside the submission on that ground is denied."

It is manifest there is nothing in the foregoing which we can review. No ruling is shown to have been had, or even asked, on the motion of April, 1890, further than the indisputable fact, that the cause was continued at that term. On what ground the continuance was granted, is not shown. And the application made October 16, 1890, made as it was pending the trial, was addressed to the court's discretion, and we can not revise it. In fact, motions for a continuance are never revisable.—3 Brick. Dig. 404, §§ 1, 2, *et seq.* It is but just to appellant's counsel that we should state the question we have been considering is neither discussed nor claimed in his brief. We have considered it proper, however, that we should notice it, in view of the remaining points to be considered.

The uncontradicted testimony is, that when the lots were sold for one year's assessment of city taxes, they were bid off by J. S. Winter, husband and trustee of Mary E. Winter, the owner against whom the assessment had been made. The price was the amount of one year's taxes, a sum less than one per cent. of the proven value of the property, and much less than one tenth of the annual rental value. When asked who was the purchaser, he answered, Sallie G. Thorington. Sallie G. Thorington is the daughter of J. S. Winter and Mary E. Winter. It is fully proven that, for years preceding the tax-sale, J. S. Winter superintended the renting, taking rent notes payable to himself as trustee, and that he collected the rents. The proof is, also, that since the tax sale there has been no change. He has continued to superintend the renting, still

[Thorington v. City Council of Montgomery.]

taking the rent notes payable to himself as trustee, and still collecting the rent as before.   If there has been any change in the possession or control of the property, or the rentals, there is no proof of it.   It was clearly competent to prove this continued control of the property and its rents by J. S. Winter, the trustee of Mary E. Winter.   The absence of visible change in the control and possession was and is a circumstance to be weighed in determining whether there was a real change in the ownership of the property.   It is certainly unusual for real purchasers of property at public sale to permit it to remain, without change, in the hands of the original owner for near five years, with no offer of proof explanatory of so wide a departure from business methods.   Grouping the whole facts—the relationship of the parties, the insignificant sum for which such valuable property was sacrificed, no offer or attempt made to redeem it, the continued possession and control of the property by the trustee of the original owner, the absence of proof even that Mrs. Thorington furnished the money with which the purchase was made—we hold that a strong presumption is raised that the title to the property was collusively placed in Mrs. Thorington, in secret trust for Mary E. Winter, her mother, and that there is no real change in the beneficial ownership.   There is no proof to overturn or weaken this presumption.

It is contended that the chancellor erred in not ordering the three lots not claimed by Mrs. Thorington to be first sold. If that were shown to be an error in this case, we would correct it in this court.   It being shown, however, that there has been no change in the ownership of the property, but that all the lots, so far as the testimony informs us, still belong to the tax-payer, there is neither duty nor propriety in directing which lot or lots shall be first sold.   Nothing is shown in the record bearing on the question of priority of burden.

Affirmed.

CLOPTON, J., not sitting.