# Gilmer v. Smith *et al.*

*Bill in Equity to set aside Deeds as Clouds on Complainant's Title.*

1. *Bill to remove cloud from title; when tax deed fraudulent and will be set aside as a cloud on title.*—In a suit to set aside a tax deed conveying lands and a subsequent conveyance as clouds on complainant's title, it was shown that the complainant claims through the purchaser at a sale under a mortgage which conveyed said lands; that subsequent to the mortgage sale the lands were sold for taxes, no notice of the tax proceedings in the probate court being given to the purchaser at the mortgage sale, or to those claiming under him. This sale for taxes was made after the period for statutory redemption from the mortgage had passed, and the purchaser at the mortgage sale had recovered the lands in ejectment. The purchaser at the tax sale urged the mortgagor to get some of his family to redeem it, stating that he did not wish to keep the land from the mortgagor's wife and children. Subsequently a sister of the mortgagor redeemed the land from the

purchaser at the tax sale, stating that "she wanted to take up the property for her brother," and she received a deed to the said land. *Held:* That the tax deed under which the sister of the mortgagor claimed was fraudulent and void as against the title of the purchaser at the mortgage sale, and should be set aside.

APPEAL from the City Court of Montgomery, in Equity. Heard before the Hon. THOMAS M. ARRINGTON.

The bill in this case was filed by the complainant, Lewis Gilmer, against Pauline Smith, Burke Miller, Elisha Walker and Malinda Walker, on October 3, 1889. The purpose of the bill was to remove certain described deeds and claims to lot 53 on the north side of Adams street, in the city of Montgomery, as a cloud on the title of complainant; and to enjoin the respondent, Malinda Walker, from interfering with the possession of defendant in said lot. On January 30, 1879, one J. H. Stewart entered into an agreement with Elisha Walker to make title to the said Walker to a certain piece of land known as lot No. 53 on the north side of Adams street in the city of Montgomery, when the said Walker should complete the payments as provided in the contract. Stewart had bought the said lot, together with other lands, from Hughes and Gunter. He paid part of the purchase money for said lot, and gave a mortgage to secure the balance. Subsequent to said purchase the said Stewart sold several other lots, in addition to the one involved in this suit. The said Stewart having failed to pay the deferred payments, and demand being made for the payment of the indebtedness secured by the mortgage executed to Hughes and Gunter, the said Walker and the other purchasers from Stewart entered into an agreement, on May 31, 1881, by which one Burke Miller acquired title to all of the lots, including lot 53, with the understanding and agreement that said Miller should mortgage all of said lots to one Matthews, to secure the balance due on said mortgage to said Hughes, (he having purchased the interest of Gunter). This agreement also further provided that when the said mortgage to Matthews should be fully paid, Burke Miller was to re-convey to the said Walker and others their respective lots. This mortgage was fully paid on January 3, 1883, and discharged of record; but Walker never received any deed from Stewart. On May 3, 1882, Elisha Walker and Malinda Walker, his wife, she acknowledging the execution thereof separate and

apart from her husband according to the form provided for the conveyance of the homestead, executed to one Segars a mortgage on the said lot No. 53, on the north side of Adams street, which said mortgage was to secure money loaned by said Segars to Elisha Walker, and it was duly recorded in the office of probate. On December 4, 1882, the said Segars delivered and assigned the mortgage made by Walker and wife to one Cyrus. The mortgagors having failed to pay the debt secured thereby, the said Cyrus, at the maturity of said mortgage, sold the lot conveyed therein, on September 17, 1884, under the power of sale contained in the mortgage, and at this sale Jacob Griel became the purchaser. A deed was duly executed to said Griel, conveying said lot. In October, 1886, Griel commenced an action of ejectment against said Elisha Walker and his wife, Malinda Walker, for the recovery of said lot No. 53, and at the January term, 1889, the said Griel recovered a judgment for the possession of said lot in said suit, and was put in the possession thereof under a writ of possession. Griel afterwards sold the said lot to Cyrus and he, on the 8th of June, 1889, sold the lot to Gilmer, the complainant in the original bill; and the said Gilmer went into possession and has been in possession ever since, having erected improvements thereon. Since Walker bought the lot from Stewart, the same had been assessed in his name for taxation up to and including January, 1886. At the date last mentioned or about that time, Elisha Walker directed the tax assessor to list the said lot to Malinda, his wife, and the assessment for 1886, which had before that time been made against Elisha Walker, was marked out and a new asssessment against Malinda Walker for taxes on the said lot was made. In December, 1886, the said Burke Miller, who was under obligation to make deed to Elisha by virtue of the agreement entered into, just prior to the execution of the mortgage to Matthews, by direction of the said Elisha, executed a deed to the said lot to the said Malinda Walker, instead of to the said Elisha, and the said Elisha and Malinda were in possession of the lot at the time, as they had been since the purchase from Stewart, and as they were up to the time they were dispossessed by Griel, as their homestead. Malinda Walker was a party defendant to said ejectment suit of Griel's. Prior to 1886, the taxes on

the said lot had been promptly paid and discharged, but the taxes for 1886 remained unpaid, and on June 25th, 1887, the said lot was sold for taxes as the property of Malinda Walker. There was no notice of the proceedings in the probate court for the sale of the said lot for taxes given to any one except the said Malinda. At the tax sale, the said lot was bought by one Brown, who also paid certain city taxes on the said lot. A certificate of purchase was given to said Brown by the tax collector of Montgomery county, but the possession of the said Elisha and Malinda was in no wise disturbed. After the execution of the writ of possession in the ejectment suit of Griel against Elisha Walker, and after the execution of the deed by Griel to said Cyrus, viz., on the 7th June, 1889, the said Brown transferred his certificate of purchase at tax sale of said lot to Pauline M. Smith, the appellee, who was a sister of Elisha Walker. Just before this transfer of said certificate to said Pauline M. Smith, the said Brown had seen the said Elisha Walker and called his attention to the fact that the two years for redemption of the said lot had almost expired and had requested the said Elisha to get some of his family to pay to him (Brown) the money he was out on the lot, as he (Brown) did not desire to keep the lot from Elisha's family. Shortly afterwards, the said Pauline M. Smith, saw the said Brown and informed him that she desired to redeem the said lot for her brother. She paid the said Brown his money and the transfer of the certificate was made. Neither Griel, Cyrus nor Gilmer knew that the said lot had been sold for taxes until a short time before the 25th June, 1889, when the two years for redemption ran out. Gilmer then filed his application for redemption of the said lot in the probate court of Montgomery county, and before the 25th June, 1889, offered to pay the money required for said redemption. The judge of probate was absent from the city, but returned before the 25th June, 1889. On July 30th, 1889, the judge of probate, while Gilmer's application to redeem said land was still on file in his office, signed a paper purporting to convey to said Pauline Smith the said lot, but this paper was not acknowledged or recorded until sometime in February, 1890. In September, 1889, the judge of probate permitted the said Gilmer to redeem the said lot, accepted his money therefor, and

executed and delivered to the said Gilmer a certificate of redemption. Later, in 1889, the said Gilmer filed the bill of complaint in this case against the said Miller, Malinda and Elisha Walker and Pauline M. Smith, praying that the deed executed by the said Miller to the said Malinda Walker and that the said tax certificate and deed, by which the said Pauline M. Smith claimed to own the said lot, be set aside and annulled and given up to be cancelled as clouds on his title.

The defendant, Pauline M. Smith, answered said bill, denying any collusion, and set up by way of a cross-bill, that she was entitled to the possession of the lot in controversy, having purchased the legal title thereto under a tax sale, and prayed in said cross-bill that the title be divested out of the complainant into her, and that the complainant be enjoined from interfering with her right to the property and possession thereof.

This is the same case which was formerly on appeal to this court, the decision of which is to be found in 93 Ala. 224. Since that decision, the original bill, has been materially amended, so as to show the relationship between the said Malinda and Pauline, and so as to allege that the purchase of said certificate by the said Pauline was really for the benefit of the said Elisha and the said Malinda, and that the said Pauline Smith had demanded possession of the said lot of the complainant and threatened to eject him from the said lot, and that the object and purpose of the said Pauline Smith was to get the said lot for the said Elisha and the said Malinda. Fraud was also charged on the part of the said Miller, Elisha, Malinda, Brown and Pauline, in that, it was alleged, they had all entered into a scheme to defeat the rights of the persons claiming under the mortgage executed by the said Elisha and Malinda to the said Segars, by and through which the said Gilmer claims. The complainant, in his bill, offered to pay to the said Pauline M. Smith all the taxes and other expenses she had been put to in reference to the said lot and interest on the same. The said Pauline Smith answered this bill as amended, admitting that she had demanded possession of the said lot, and that she intended to oust the complainant, but denying all charges of fraud, and alleging that she bought the certificate of purchase to the said lot from the said Brown for herself, and not for her brother.

[Gilmer v. Smith *et al.*]

The complainant demurred to the cross-bill, on the ground that it contained no equity. No witness was examined in the case except the said Brown ; and the cause was submitted, as shown by the note of testimony, on the deposition of the said John Brown, and upon an agreed statement of facts, which show the facts as stated above, and upon the pleadings.

The chancellor decreed that the complainant was not entitled to relief prayed for, and dismissed the bill. He also decreed that the cross-bill had no equity, as it was shown that the respondent, Pauline Smith, was the owner of the legal title to the lot in controversy, and could obtain adequate relief at law. He, therefore, sustained the demurrer to the cross-bill, and dismissed the same. The complainant in the original bill prosecutes this appeal, and assigns as error the decree of the chancellor dismissing his bill.

THOS. H. WATTS, for appellant.—There was no notice given to the purchaser at the mortgage sale, or those claiming under him, of the intended sale of the lands for taxes, and the complainant in this suit can not be deprived of his property without due process of law, as would be the result if relief was not granted him.— *Wilburn v. McCalley*, 63 Ala. 443. As bearing on the legality of the tax sale, and on the purchase indirectly by the mortgagor, see *Oliver v. Robinson*, 58 Ala. 46 ; *Carlisle v. Watts*, 78 Ala. 487 ; *McGee v. Fleming*, 82 Ala. 276 ; *Jackson v. King*, 82 Ala. 432 ; *Simms v. Greer*, 83 Ala. 263 ; *Cox v. Johnson*, 80 Ala. 22 ; *Riddle v. Messer*, 84 Ala. 241; *Crook v. Anniston Land Co.*, 93 Ala. 4 ; *Johns v. Johns*, 93 Ala. 239 ; *Donnor v. Quartemas*, 90 Ala. 164 ; *Howze v. Dew*, 90 Ala. 178 ; *Thorington v. City Council*, 94 Ala. 266 ; *Feagin v. Jones*, 94 Ala. 597. The deed to Pauline Smith had no legal effect until it was acknowledged by the probate judge, which acknowledgment was made after the certificate of redemption was given to the complainant.—Code of 1886, § 592 ; *Jones v. Randle*, 68 Ala. 258 ; *Lassitter v. Lee*, 68 Ala. 287.

JOHN G. WINTER, *contra.*—The facts of the case fail to establish that Pauline Smith paid Brown as an advance or loan to Elisha Walker. The rights of the complainant must be tested by the rights of Walker, through whom he claims, and as Walker could establish no result-

ing trust in the lands, or compel a reconveyance to him, the complainant is not entitled to relief.—*Patton v. Beecher*, 62 Ala. 579; *White v. Farley*, 81 Ala. 563 ; *Brock v. Brock*, 90 Ala. 86 ; *Manning v. Pippen*, 95 Ala. 537. The tax proceedings were valid, and the purchaser at the tax sale and his vendee, the defendant, Pauline Smith, obtained a valid title.—1 Blackwell on Tax Titles, § 275 : *Oliver v. Robinson*, 58 Ala. 46 ; *Carlisle v. Watts*, 78 Ala. 486 ; *Crook v. Anniston Land Co.*, 93 Ala. 4.

McCLELLAN, J.—Counsel for appellees argue that it is wholly improbable that the redemption by Pauline Smith from Brown could have been in the interest of Walker, when all that Walker had to gain by that tortious course was a release of the land from the payment of the insignificant sum secured by the Segars mortgage, a sum scarcely greater than the consideration passing between Pauline and Brown. This argument is deprived of all weight by the facts that the Segars mortgage had been foreclosed, the period for statutory redemption had passed, and the purchaser at the sale under it had recovered the land in ejectment and was in possession of it before the purchase by Pauline Smith from Brown. So that the land was wholly lost to Walker, unless he could have it redeemed from the tax sale for his own benefit and in such way as that his interest would not appear and as of consequence the redemption would not enure to Gilmer who held through the Segars mortgage. It was, therefore, obviously to Walker's interest to attempt to do what the bill charges in this connection. The land itself was about to be lost irretrievably to him. He could not avert the catastrophe by becoming himself the purchaser from Brown. Naturally he wanted to conserve his interest and save the land if he could. Brown was anxious that he should do so. Pauline Smith declared that she wanted to purchase from Brown for Walker, her brother. The wishes, therefore, of each of these parties converged towards the accomplishment of the plan to rescue the land for Walker and his family. Brown suggested the means of accomplishing this end. He "urged Walker *to get some of his family to redeem it,*" as he Brown, "did not want to keep it from Walker's wife and children." Following close upon this, Pauline Smith, a sister of Walker, appeared and redeemed the land, saying that

"she wanted to take up the property for her brother." This rounded and completed the scheme. And we are unable on these facts to reach any other conclusion than that Pauline Smith purchased from Brown at Walker's instance and wholly for the benefit of the latter, taking the transfer of the tax certificate and afterwards the tax deed to herself in attempted effectuation of a purpose and intent entertained by Brown, Walker and Pauline Smith to defeat Gilmer, or those to whose rights he succeeded under the Segars mortgage, of his or their rights in the premises; and we accordingly hold that the tax deed is fraudulent and void as against the title of Gilmer, and that the complainant is entitled to the relief prayed in his bill.—*Thorington v. City Council*, 94 Ala. 266. A decree will accordingly be entered here cancelling the tax deed to Pauline Smith as a cloud on Gilmer's title. Complainant will be decreed to pay to Pauline Smith whatever sum she properly paid Brown for the certificate of purchase at the tax sale. Defendant will pay the costs in this court and the court below.

Reversed and rendered.


